## Case No. 3,629.

### DAVIS v. CHILDS.

[Nowhere reported; opinion not now accessible.]

---

## Case No. 3,630.

### DAVIS et al. v. CLEMSON.

[6 McLean, 622.][1]

Circuit Court, D. Ohio. Oct. Term, 1855.

CONFLICT OF LAWS—USURIOUS CONTRACT—ACCOMMODATION PAPER—PLACE OF NEGOTIATION.

Clemson, a citizen of Ohio, drew a bill on Suydam & Co., of New York, for their accommodation, and after indorsing it forwarded it to them. They accepted the bill, and negotiated it with the plaintiffs, citizens of New York, for a usurious consideration, by the laws of New York. An action being brought against the drawer, the usury was pleaded, under the laws of New York, which, for usury, avoids the contract. *Held* that the laws of New York governed the contract, and that the assignment to the plaintiffs, being usurious, avoided the contract.

[Applied in Re Conrad, Case No. 3,126.]

[This was an action at law by Davis, Brooks & Co. against William F. Clemson.]

Stanbery & Hunter, for plaintiffs.
Swayne & ——, for defendant.

OPINION OF THE COURT. This action is brought on a bill of exchange dated 1st June, 1850, by Clemson, payable to his own order, on Suydam, Sage & Co., for five thousand dollars payable in four months, and indorsed by him. Several special pleas were filed by the defendant, substantially the same. Among other things they set out that the cause of action in the different counts of the declaration are the same; that the bill was drawn for the accommodation of Suydam, Sage & Co., who were to pay it at maturity, of which the plaintiffs had notice; that they accepted the paper, and afterwards made a corrupt and usurious agreement with the plaintiffs to loan from them four thousand eight hundred sixty-nine dollars and ninety-nine cents, until October 4th, 1850, for the sum of one hundred and thirty dollars, and to receive the above bill accepted by Suydam, Sage & Co.; which sum so paid as interest was more than seven per cent. per annum on the sum loaned, in violation of the Statutes of New York, which declare all in-

[1] [Reported by Hon. John McLean, Circuit Justice.]

struments void, founded on a usurious consideration. To these pleas the plaintiffs filed a general demurrer. As the demurrer admits the facts stated in the pleas, the law must be applied to the facts. The main stress of the argument by the plaintiffs' counsel is, that the drawer of the bill who indorsed it, is a citizen of Ohio; and that the contract must be considered as governed by the laws of Ohio. It is admitted that the drawer and indorser, whether the same person or different persons, do not contract to pay the money in the place on which the bill is drawn; but only to guarantee its acceptance and payment, in that place by the drawer. And it is also admitted that the liability of both the drawer and indorser arises, under the law of the place where, in legal contemplation, the bill was drawn or indorsed. And it is also admitted, that where a valid instrument is created, untainted with usury, that a subsequent usurious negotiation of it, cannot be pleaded by the drawer in discharge of his obligation. That in such a case, the question of usury is limited between the indorser and the indorsee; but does not reach or taint the original instrument. There are authorities which do not go this length; but the weight of authority sustains the principles above stated; and they embrace the legal ground assumed by the plaintiffs' counsel. Nichols v. Fearson, 7 Pet. [32 U. S.] 110; Munn v. Commission Co., 15 Johns. 55; Lloyd v. Scott, 4 Pet. [29 U. S.] 229; Braman v. Hess, 13 Johns. 52.

The bill in question was signed by Clemson and indorsed by him, and then it was transmitted to Suydam, Sage & Co., in New York, who accepted it, and by them it was offered to the plaintiffs of New York, who discounted it, reserving a rate of interest which, by the law of New York, was usurious. This bill was blank paper when it was transmitted by Clemson to Suydam, Sage & Co., and after it was accepted by them, it was nothing more than blank paper. It was intended for the benefit of the acceptors, but thus far, there was no liability by the drawer, indorser or acceptors. No action could be sustained on it. It was then, in contemplation of law, no contract or bill of exchange. Until negotiated, it was, in effect, blank paper. It was susceptible of being made a valid bill by filling up the blanks, and passing it bona fide to a third party. In Snaith v. Mingay, 1 Maule & S. 87, it was held, that where a merchant in Ireland, sends to England certain bills of exchange, with blanks for the dates, the sums, the times of payment, and the names of the drawers, signed and indorsed by himself, with a request that his correspondent in England would fill up the blanks, who did so with a date at a place in Ireland, the bills were held to be Irish contracts. And Mr. Justice Bailey held in the same case, if the bills had been negotiated to an innocent indorsee, after the death of the drawer, his representatives

would have been bound. But if these Irish bills had been signed by the drawer for the accommodation of the acceptor, and they had been filled up and negotiated on a usurious consideration, could the usurious holder have recovered their amount from the drawer? These Irish bills were drawn for the benefit of the drawer, the drawees were his debtors or securities, and the bill was to pay the debt of the drawer. The transaction was bona fide, and altogether different from the one before us. It is true no additional name was added to the paper, but that on principle can make no difference. The act of negotiation imparted to the bill validity, if it be a valid bill. Without this, the bill with the names upon it, was of no validity. It was not the signature of Clemson, or the signatures of the acceptors, but the loan of the money, on the credit of the bill, which could give effect to it. And here the question arises, whether that which was essential to give effect to the bill, did not enter into its inception. Whether that, without which the paper constituted no bill of exchange, does not constitute a part of it. But it is argued by the plaintiffs that Suydam, Sage & Co., did not indorse the bill, and that they claim under the blank indorsement of Clemson. If the bill had been an effective instrument as between the parties, before it was negotiated, the argument would be unanswerable. But as its negotiation was essential to its vitality, the argument is without application to the case. On principle, these positions would seem to be clear, and they are also clear on authority. "If a bill of exchange be drawn in consequence of an usurious agreement for discounting it, although the drawer to whose order it was payable was not privy to this agreement, still it is void in the hands of a bona fide indorser." 2 Camp. 599. In Holt's N. P., Lord Ellenborough lays down the law, that a bona fide holder cannot recover upon a bill founded in usury; so neither can he recover upon a note where the payer's indorsement, through which he must claim, has been made by an usurious agreement. But if the first indorsement be valid, a subsequent usurious indorsement will not affect him; because such intermediate indorsement is not necessary to his title to sue the original parties to the note. Lloyd v. Scott, 4 Pet. [29 U. S.] 229. In Nichols v. Fearson, 7 Pet. [32 U. S.] 106, the court say: "It is necessary to bear in mind that we are not now called upon to consider a case occurring upon the transfer of a note which is, in its origin, a mere nominal contract, one on which, as the test is very properly established in the New York courts, no cause of action arose between the original parties. The present is a case of greater difficulty." "It will hardly be contended that although the indorsement gave no cause of action against the indorser, yet it did operate to give a right of action against the maker of the note." In the case of Munn v. Commission Co., 15 Johns. 55, the court say: "If a bill or note be made for the purpose of raising money upon it, and it is discounted at a higher premium than the legal rate of interest, and where none of the parties whose names are on it, can, as between themselves, maintain a suit upon the bill when it becomes mature, provided it had not been discounted, that then such discounting of the bill would be usurious and the bill must be void."

The counsel for the plaintiffs admit, at least tacitly, that the negotiation of this bill was void under the laws of New York, by the argument that it is an Ohio contract, and is, consequently, governed by the laws of Ohio. The legal obligation which arises against the defendant, whether as drawer or indorser, it is contended, is not that he shall pay the money positively, but that he will pay it, if the acceptors do not pay it at the maturity of the bill, provided payment shall be demanded and a legal protest made, and he shall be duly notified of the same. There is no expression on the face of this contract, where the money was to be paid. In such an obligation, unless there was something in the negotiation of the instrument to change the effect of it, the place of payment is taken to be the domicil of the person bound. But on such a contract the party is liable wherever he shall be found. Where was the bill in question made and under what law? The plaintiffs who discounted it were citizens of New York, and so were Suydam, Sage & Co. The latter were bound to pay the bill at maturity. That it was usurious and void, as to them, wil not be controverted. And if this be so, how can a void act create a liability against the defendant, either as an accommodation drawer or indorser? As before shown, until the plaintiffs discounted the bill, it had no binding effect upon the defendant. And if by reason of the usury this discount imposed no obligation to pay on the acceptors, for whose benefit the bill was drawn, can it be binding on his sureties? If an instrument be void for usury as to one, it is so as to all; and any party may set up the defence. Austin v. Fuller, 12 Barb. 360.

The case of Andrews v. Pondard, 13 Pet. [38 U. S.] 65, arose on the following bill of exchange: "Exchange for $7,287.78. New York, March 11, 1837. Sixty days after date of this first of exchange, second of same tenor and date unpaid, pay to Messrs. Pond, Converse & Wadsworth, or order, seven thousand, two hundred and eighty-seven dollars, seventy-eight cents, negotiable and payable at the Bank of Mobile, value received, which place to the account of your obedient servant. D. Carpenter. To Messrs. Sayre, Converse & Co., Mobile, Alabama." The bill was indorsed by Carpenter, the drawer, who, as well as the drawees were citizens of Alabama. The bill was drawn to pay a debt admitted to be due to H. M. Andrews & Co., of New York. But the amount stated in the bill, included a prior indebtment with ten per

cent. on it to cover exchange, and which appeared to have been done, to avoid the statute of usury.

In their opinion, the court say: "The defendants allege that the contract was not made in reference to the laws of either state, and was not intended to conform to either. That a rate of interest forbidden by the laws of New York, where the contract was made, was reserved on the debt actually due; and that it was concealed under the name of exchange, in order to evade the law. Now if this defence is true, and shall be so found by the jury, the question is not which law is to govern in executing the contract; but which is to decide the fate of a security taken upon usurious agreement, which neither will execute. Unquestionably, it must be the law of the state where the agreement was made and the instrument taken to secure its performance. A contract of this kind cannot stand on the same principles, with a bona fide agreement made in one place to be executed in another. In such cases the legal consequences of such an agreement, must be decided by the law of the place where the contract was made. If void there, it is void everywhere." In that case it was argued by Mr. Webster, as the counsel in the case before us have argued, "that the contract is to be governed by the laws of the place where it was to be executed. The contract on the face of this bill of exchange expresses that it was to be executed elsewhere than where it was made. The parties entered into it with a view to its performance at another place. It is a foreign bill and of course is dated in one place, and in one state, and made payable in another." In that case the usury was included in the body of the bill, but the bill was made payable in Alabama, and all the defendants were citizens of that state. It was an Alabama contract, in a much stronger point of view, than the one before us was an Ohio contract. The effect of usury in New York was to avoid the instrument; in Alabama, the interest only was avoided.

In the case under consideration, the bill, as between the parties, was as blank paper, until it was negotiated to the plaintiffs on an usurious consideration. Could the plaintiffs sue the acceptors, who were and are citizens of New York? This will not be contended. They were citizens of New York, and acted under the laws of New York. They were the principals in the transaction, and the usury releases them from all liability on the bill. Admit, that the imperfect bill was forwarded to the acceptors by the defendant to be filled up by them; to bind him must they not act in good faith; and must not the party who discounts the bill, act in good faith? Can the plaintiffs complain that they should be governed by the laws of their own state? In the defence, it is averred that they had notice, that the defendant was an accommodation drawer and indorser. He, therefore, can only be made responsible on strict principles of law. If the bill had been a valid instrument, as between the parties to it; if an action could have been sustained against the acceptor by the drawer for non-payment, at maturity, and it had been negotiated bona fide, it is admitted (the bill having been signed and indorsed in Ohio, from which facts the legal liability arises, on the failure of payment by the acceptors, so far as the defendant is concerned), it would have been an Ohio contract. But it is denied that any liability against the defendant can arise, he being an accommodation drawer and indorser, on an usurious negotiation of the bill, in the hands of the person who thus obtained it. It is void by the act under which it was negotiated. Not void in part, but in whole. Void not only as against the acceptors, for whose benefit it was negotiated, but also as against the accommodation drawer and indorser. If the facts alleged in the pleas shall not be established before a jury, the rulings now made, will not apply. Demurrer overruled.